UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LEE G.,

                 Plaintiff,

    v.                                           5:19-CV-1558
                                                      (DJS)
COMMISSIONER OF SOCIAL SECURITY,

                 Defendant.
_____

**APPEARANCES:**                                 **OF COUNSEL:**

OLINSKY LAW GROUP                 HOWARD D. OLINSKY, ESQ.
Attorney for Plaintiff
250 South Clinton Street, Suite 210
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.      CHRISTOPHER L. POTTER, ESQ.
OFFICE OF REG'L GEN. COUNSEL
Attorney for Defendant
J.F.K. Federal Building - Room 625
15 New Sudbury Street
Boston, MA 02203

**DANIEL J. STEWART**
**United States Magistrate Judge**

## MEMORANDUM-DECISION AND ORDER[1]

     Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) seeking review of a decision by the Commissioner of Social Security that Plaintiff was not disabled. Dkt. No. 1. Currently before the Court are Plaintiff's Motion for Judgment on the Pleadings

---

[1] Upon Plaintiff's consent, the United States' general consent, and in accordance with this District's General Order 18, this matter has been referred to the undersigned to exercise full jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. *See* Dkt. No. 7 & General Order 18.

and Defendant's Motion for Judgment on the Pleadings. Dkt. Nos. 11 & 15. For the reasons set forth below, Plaintiff's Motion for Judgment on the Pleadings is granted and Defendant's Motion is denied. The Commissioner's decision is reversed and the matter is remanded for further proceedings.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born in 1979. Dkt. No. 8, Admin. Tr. ("Tr."), p. 242. Plaintiff reported that he did not complete high school or obtain an equivalency diploma, and left school after completing the eleventh grade. Tr. at p. 50. He has past work experience as a molding machine tender and retail sales associate. Tr. at pp. 247 & 274. Plaintiff alleges disability due to anxiety, depression, agoraphobia, arthritis, sleep apnea, high blood pressure, acid reflux, and high cholesterol. Tr. at p. 94.

### B. Procedural History

Plaintiff applied for Supplemental Security Income on May 16, 2016. Tr. at p. 94. He alleged a disability onset date of September 15, 2015. *Id.* Plaintiff's application was initially denied on July 8, 2016, after which he timely requested a hearing before an Administrative Law Judge ("ALJ"). Tr. at pp. 110 & 122. Plaintiff appeared at a hearing before ALJ John Ramos on July 26, 2018 and November 13, 2018 at which he and a vocational expert testified. Tr. at pp. 32-68. On November 29, 2018, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act. Tr. at pp. 15-25. On October 18, 2019, the Appeals Council denied Plaintiff's request for

review, making the ALJ's decision the final decision of the Commissioner.  Tr. at pp. 1-6.

### C. The ALJ's Decision

In his decision, the ALJ made the following findings of fact and conclusions of law.  First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 16, 2016, the application date.  Tr. at p. 17.  Second, the ALJ found that Plaintiff had the following severe impairments: social anxiety and panic disorders.  *Id.*  Third, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings").  Tr. at p. 18.  Fourth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to

> perform a full range of work at all exertional levels.  Mentally, the claimant retains the ability to understand and follow simple instructions and directions, perform simple tasks with supervision and independently, and maintain attention/concentration for simple tasks.  He can regularly attend to a routine and maintain a schedule.  The claimant can have occasional interaction with coworkers and supervisors to the extent necessary to carry out simple tasks.  For example, he can ask for help when needed, accept instruction or criticism from supervisors, handle conflicts with others, state his own point of view, initiate or sustain a conversation, and understand and respond to physical, verbal and emotional social cues.  However, he should avoid work requiring more complex interaction, negotiation, or joint efforts with coworkers to achieve work goals, and he should not interact with the public.  The claimant can handle reasonable levels of simple work-related stress, in that he can make decisions directly related to the performance of simple work, and can handle the usual workplace changes and interactions associated with simple work in a position where he is not responsible for the work of or required to supervise others.  The claimant should also perform goal-oriented work,

rather than work involving a production pace, in a workplace with little change in daily routine and processes.

Tr. at pp. 20-21.

Fifth, the ALJ found that Plaintiff was unable to perform any past relevant work. Tr. at p. 23.  Sixth, the ALJ found that Plaintiff was categorized as a "younger individual," had a limited education, and was able to communicate in English.  *Id.*  Seventh, the ALJ found that transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled.  *Id.*  Finally, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform.  Tr. at p. 24.  The ALJ, therefore, concluded that Plaintiff was not disabled.  Tr. at pp. 24-25.

## II. RELEVANT LEGAL STANDARDS

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of

the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

## B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. § 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

### III. ANALYSIS

Plaintiff presents a single question for the Court's review – whether the ALJ committed reversible error by improperly weighing the opinions of Plaintiff's treating providers. Dkt. No. 11, Pl.'s Mem. of Law. In response, Defendant asserts that the ALJ reasonably gave some weight to the joint opinion of Plaintiff's treating physicians, and that he reasonably discounted the opinions of Plaintiff's other treating providers. Dkt. No. 15, Def.'s Mem. of Law.

The Second Circuit has long recognized the "treating physician rule" set forth in 20 C.F.R. §416.927(c). "'[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)). However, "the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).

In deciding how much weight to afford the opinion of a treating physician, the ALJ must "'explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and, (4) whether the

physician is a specialist.'"  *Greek v. Colvin*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)).

However, where the ALJ's reasoning and adherence to the regulation is clear, and it is obvious that the "substance of the treating physician rule was not traversed," no "slavish recitation of each and every factor" of 20 C.F.R. § 416.927 is required.  *Atwater v. Astrue*, 512 Fed Appx. 67, 70 (2d Cir. 2013) (citing *Halloran v. Barnhart*, 362 F.3d at 31-32).  The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant replacing the consideration of the treatment relationship between the source and the claimant.  20 C.F.R. §§ 416.927(c)(1)-(6).

In *Estrella v. Berryhill*, the Second Circuit more recently addressed an ALJ's failure to "explicitly" apply the regulatory factors set out in *Burgess* when assigning weight to a treating physician's opinion.  925 F.3d 90 (2d Cir. 2019).  In *Estrella*, the Court explained that such a failure is a procedural error and remand is appropriate "[i]f 'the Commissioner has not [otherwise] provided 'good reasons' [for its weight assignment][.]'"  925 F.3d at 96 (alteration in original) (quoting *Halloran v. Barnhart*, 362 F.3d at 32).  The Court further clarified that "[i]f, however, 'a searching review of the record' assures us 'that the substance of the treating physician rule was not traversed,' we will affirm."  *Id.* (quoting *Halloran v. Barnhart*, 362 F.3d at 32).  The Court also noted the question of "whether 'a searching review of the record . . . assure[s us] . . . that the substance of the . . . rule was not traversed'" is "whether the record

8

otherwise provides 'good reasons' for assigning 'little weight' to [the treating psychiatrist's] opinion." *Id.*

The Second Circuit recently reiterated its *Estrella* findings in *Ferraro v. Saul*, indicating that the ALJ did not explicitly consider the frequency, length, nature, and extent of treatment that the claimant had with his treating physicians, did not otherwise provide "good reasons" for assigning reduced weight to the opinions of those physicians, and a searching review of the record did not assure the Court that the substance of the treating physician rule was not traversed. 806 Fed. Appx. 13, 15-16 (2d Cir. 2020). The Court in *Ferraro* also indicated that "merely acknowledging the existence of treatment relationships is not the same as explicitly considering 'the frequency, length, nature, and extent of treatment.'" *Id.* at 14.

Judicial deference to the opinion of a treating physician is especially important in the context of mental illness, as the Second Circuit has recently affirmed, cautioning that "ALJs should not rely heavily on the findings of consultative physicians after a single examination." *Id.* at 16. In cases where "mental health treatment is at issue, the treating physician rule takes on added importance." *Bodden v. Colvin*, 2015 WL 8757129, at *9 (S.D.N.Y. Dec. 14, 2015).

Plaintiff contends that the ALJ failed to properly weigh the opinion evidence from his treating providers regarding his functional limitations in reaching his RFC determination. Pl.'s Mem. Of Law.

### A. Drs. Joyce and Cummings

Donald Joyce, M.D. prepared a Medical Source Statement in which he reported treating Plaintiff five times within a twelve-month period. Tr. at p. 878. Dr. Joyce's medical opinion indicated that Plaintiff would be off-task from ten to fifteen percent of the workday, would be absent about three days per month, and would have "good days" and "bad days." Tr. at pp. 878-80. This opinion was co-signed by Dr. Joyce's supervisor, DeAnn Cummings, M.D. *Id.*

If an ALJ chooses not to afford controlling weight to a treating physician's opinion he must "explain the reasoning for h[is] decision not to do so with specificity." *Jarvis v. Colvin*, 2016 WL 4148352, at *8 (N.D.N.Y. Aug. 4, 2016). "If the Court finds the ALJ erred in failing to adequately explain his reasoning for not crediting the opinion of any of the treating physicians, then the case must be remanded." *Meadors v. Colvin*, 2015 WL 224759, at *7 (N.D.N.Y. Jan. 15, 2015). Here, the ALJ not only failed to acknowledge the existence of the treating relationship, but also failed to address the frequency, length, nature, and extent of the treatment. In addition, the ALJ did not offer sufficiently specific reasons for his conclusion, and his analysis of the opinion did not satisfy the requirements of the treating physician rule. The matter, therefore, must be remanded for further consideration.

While the record in this case made clear that Dr. Joyce had a treatment history with Plaintiff, spanning at least twelve months, Tr. at p. 878, the ALJ's decision makes no reference to this history, nor to the nature or extent of Dr. Joyce's treatment

relationship with Plaintiff. *See* Tr. at pp. 18-23. This was error. *Andrew L. v. Berryhill*, 2019 WL 1081460, at *5 (N.D.N.Y. Mar. 7, 2019); *Robert B. v. Comm'r of Soc. Sec.*, 2018 WL 4215016, at *5 (N.D.N.Y. Sept. 5, 2018).

The ALJ's analysis of the opinion also makes no reference to evidence supporting Dr. Joyce's asserted limitations. *See* Tr. at p. 22. Plaintiff argues that there is significant evidence supporting Dr. Joyce's assessment. *See* Pl.'s Mem. of Law at p. 17 (citing to the administrative record). While the Court must not re-weigh opinion evidence so long as there is substantial evidence to support the ALJ's determination, the ALJ was required to consider "the amount of medical evidence supporting the opinion." *Greek v. Colvin*, 802 F.3d at 375. Here, his opinion fails to show he did so. There is clearly evidence supportive of Plaintiff's position and absent some discussion of that evidence in the context of evaluating Dr. Joyce's opinion, the Court cannot find that the ALJ's decision was supported by the necessary "good reasons." *Estrella v. Berryhill*, 925 F.3d at 96 ("the ALJ must give good reasons" in explaining the weight afforded to a treating physician's opinion).

It also appears that in discussing the extent to which Dr. Joyce's opinion was consistent or inconsistent with other evidence, the ALJ engaged in improper "cherry picking" of the evidence. "Cherry picking 'refers to improperly crediting evidence that supports findings while ignoring conflicting evidence from the same source.'" *Tara S. v. Berryhill*, 2019 WL 121243, at *6 (N.D.N.Y. Jan. 7, 2019) (quoting *Dowling v. Comm'r of Soc. Sec.*, 2015 WL 5512408, at *11 (N.D.N.Y. Sept. 15, 2015)). The ALJ

11

afforded the opinion of Drs. Joyce and Cummings some weight, but ultimately decided not to adopt the specific portions of their findings related to the amount of time that Plaintiff would be off-task and absent from work. The ALJ chose not to adopt those portions because he found them to be "purely speculative" and inconsistent with other portions of their opinion: namely, that the Plaintiff has an "unlimited or very good" ability to maintain regular attendance and be punctual within customary, usually strict tolerances; sustain an ordinary routine without special supervision; and perform at a consistent pace without an unreasonable number and length of rest periods. Tr. at p. 22. It is difficult to ascertain why exactly the ALJ felt that the opinion of Plaintiff's treating physician was more speculative than that of the consultative physician, especially considering that the opinions in these categories remain consistent among Plaintiff's other treating providers. The ALJ's decision to disregard only the portions of the opinion most supportive of the presence of a disability seems to be indicative of cherry-picking.

Moreover, the presence of cherry-picking is particularly troublesome where, as here, mental health symptoms are involved. "Mental health patients have good days and bad days; they 'may respond to different stressors that are not always active.'" *Pagan v. Saul*, 2020 WL 2793023, at *6 (S.D.N.Y. May 29, 2020) (citation omitted). "Cycles of improvement and debilitating symptoms [of mental illness] are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis

for concluding a claimant is capable of working." *Estrella v. Berryhill*, 925 F.3d at 97 (citations omitted).

The ALJ also pointed to Plaintiff's ability to pick up his bedroom, wash dishes, take care of pets, and sometimes do yard work or watch television as evidence that his impairments were not as severe as alleged. Tr. at p. 23. It is not clear, however, that the parallel that has been drawn between these at-home activities and Plaintiff's anxiety and panic disorder symptoms is appropriate, as his symptoms seem to be exacerbated primarily in situations outside of his home. Tr. at p. 21.

The ALJ's cherry picking of evidence in concluding to discount the opinion of Dr. Joyce was not consistent with the treating physician rule. *Ardito v. Barnhart*, 2006 WL 1662890, at *5 (D. Conn. May 25, 2006) (cherry picked decision violates treating physician rule); *Tim v. Colvin*, 2014 WL 838080, at *7-8 (N.D.N.Y. Mar. 4, 2014) (cherry picked analysis "cannot constitute a good reason").

Taken together, these factors demonstrate that the ALJ failed to properly articulate his reasoning for not affording Dr. Joyce's opinion controlling weight and therefore remand is required for a more complete consideration of the weight to be afforded that opinion. *See, e.g.*, *Sheri S. v. Berryhill*, 2019 WL 1429522, at *5 (N.D.N.Y. Mar. 29, 2019); *Robert B. v. Comm'r of Soc. Sec.*, 2018 WL 4215016, at *6 (citing cases).

## B. Other Providers

Under the regulations, Plaintiff's therapists are not acceptable medical sources, but are classified as "other" sources.  20 C.F.R. § 416.927(f)(1)-(2).  Therefore, while the ALJ is "free to consider the opinion of [non-acceptable medical sources] in making his overall assessment of a claimant's impairments and residual abilities," he is not required to treat the opinions with the same level of deference as a treating physician. *Genier v. Astrue*, 298 Fed. Appx. 105, 108 (2d Cir. 2008) (summary order).  "However, an ALJ should adequately explain why he rejected an opinion from such a source if it is significantly more favorable to the plaintiff and may well 'have an effect on the outcome of the case.'"  *Decker v. Saul*, 2020 WL 5494369, at *5 (W.D.N.Y. Sept. 11, 2020) (citing 20 C.F.R. § 404.1527(f)).  Plaintiff advances treatment reports prepared by Caitlin McArdle, MSW, and Stephanie Starie, LMSW, which are in fact significantly more favorable to the Plaintiff and may well have had an effect on the outcome of the case if given more weight.

In addressing the opinions of Plaintiff's therapists, rather than adequately explaining his rationale, the ALJ instead combined the content of both opinions from separate providers into a single sentence as if they were one report.  Tr. at p. 19.  He only notes that "some of the claimant's providers have reported greater limitations in several areas of functioning (B3F, B10F)." *Id.*  Starie and McArdle are not mentioned by name, but rather acknowledged only by a parenthetical reference (B3F, B10F) within the sentence.  However, aside from noting that "this level of limitation does not comport

with the claimant's mental status exam or other opinions of record," the ALJ does not identify which limitations he specifically disagrees with, or from which treatment provider. For that matter, he cites to Dr. Shapiro's exam in particular as providing contrary evidence to these reports. Tr. at p. 19. As the Second Circuit has cautioned, "ALJs should not rely heavily on the findings of consultative physicians" such as Dr. Shapiro "after a single examination." *Ferraro v. Saul*, 806 Fed. Appx. at 16. This is especially true in the mental health context, where patients may have "good days" and "bad days," rendering a longitudinal assessment of symptoms by a treating provider more accurate. *See Pagan v. Saul*, 2020 WL 2793023, at *6.

### 1. Caitlin McArdle, MSW

Caitlin McArdle completed a Medical Source Statement on April 20, 2016, indicating at that time that she had been treating Plaintiff with weekly one-hour therapy sessions since March 2, 2016. Tr. at p. 365. In her report, McArdle indicated that Plaintiff would likely be absent from work four or more days per month due to his impairments, and that he would be unable to meet competitive standards for attendance. Tr. at pp. 367 & 369. This assessment is generally congruent with the assessment of Drs. Joyce and Cummings, who opined that Plaintiff was likely to be absent about three days per month. Tr. at p. 880.

Although there are, as the ALJ noted, many aspects of McArdle's report that describe higher levels of impairment than contained in other opinions, there are also a number that are consistent with the findings of Plaintiff's treating physician and with

his other treating therapist's opinion. Without sufficient explanation by the ALJ, it is not possible to speculate which portions of the report he found specifically objectionable or which evidence in the record he felt was adequate to disprove and discount the opinion entirely.

### 2. Stephanie Starie, LMSW

A Medical Source Statement was also completed by Stephanie Starie, LMSW, on July 5, 2018. Tr. at pp. 833-37. Starie indicated that Plaintiff would have "no useful ability to function" in the area of maintaining attendance within customary, usually strict tolerances. Tr. at p. 834. She opined that Plaintiff would be absent from work about four days per month, and that he would be off-task for more than twenty percent of an eight-hour workday. Tr. at p. 835. Starie indicated that Plaintiff would have "good" days and "bad" days, but "most often 'bad' days." *Id.* Again, although the ALJ is correct that Starie's report describes much more marked limitations than did many of the other providers, it is also generally consistent with the findings of Caitlin McArdle and Drs. Joyce and Cummings related to the time Plaintiff would be off-task and absent from work. In fact, it appears that all of Plaintiff's treating providers are in agreement as to the degree of limitation in those specific categories, and the only disagreement comes from the non-treating physicians. While the ALJ is certainly entitled to give more weight to the other physicians' opinions if supported by substantial evidence, he should do so with caution, particularly given the mental health nature of Plaintiff's claims.

Given the caution required in this category, and the lack of sufficient analysis by the ALJ, this case must be remanded for further consideration.

## IV. CONCLUSION

**ACCORDINGLY**, it is

**ORDERED**, that Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 11) is **GRANTED**; and it is further

**ORDERED**, that Defendant's Motion for Judgment on the Pleadings (Dkt. No. 15) is **DENIED**; and it is further

**ORDERED**, that Defendant's decision denying Plaintiff disability benefits is **VACATED** and **REMANDED** pursuant to Sentence Four of section 405(g) for further proceedings; and it is further

**ORDERED,** that the Clerk of the Court shall serve copies of this Memorandum-Decision and Order on the parties.

Dated: January 4, 2021
      Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge